## AFFIDAVIT

Your Affiant, Melonie Mague, being duly sworn, deposes and states:

1. Affiant is an officer or employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA) within the meaning of Section 878(a) of Title 21, United States Code, that is an officer who is empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code.

2. Affiant is a Special Agent (SA) for the United States Department of Justice, Drug Enforcement Administration (DEA), and has been so employed as a Special Agent (SA) since June 2010. During Affiant's employment with the DEA, Affiant has been assigned to the Detroit Field Division (DFD) in Detroit, Michigan the Cleveland District Office (CDO) in Cleveland, Ohio.

## TRAINING AND EXPERIENCE

3. Affiant received specialized training at the DEA Training Academy in Quantico, Virginia, regarding the identification of narcotic controlled substances and the operation of drug trafficking organizations. Affiant has also been involved in the investigation of numerous individuals and organizations involved in the manufacturing, distribution, and use of controlled substances. During Affiant's employment with DEA as a Special Agent, Affiant has also worked in an undercover capacity for the purpose of purchasing and/or delivering controlled substances; and has participated in the preparation of affidavits in support of numerous search and arrest warrants for violations of federal drug laws contained in Title 21, United States Code, as well as in the execution of the same. In addition, Affiant has on numerous occasions, as a Special Agent with DEA, made seizures of contraband, conveyances, currency, drug

paraphernalia, and firearms possessed or used in relation to violations of Title 21, United States Code, Section 841.  Affiant has successfully conducted numerous investigations that have resulted in the arrest of numerous drug traffickers and the seizure of significant quantities of drugs and drug-related proceeds.  Affiant has further conducted surveillance operations of drug traffickers and has interviewed numerous persons personally involved in drug trafficking.  Affiant has also supervised numerous confidential sources during controlled purchases of narcotics.  Through this training and experience, Affiant has become familiar with, and has gained a thorough understanding of the methods, manner and means used by individuals engaged in the unlawful manufacturing, trafficking, and use of controlled substances.

4. Affiant is aware that persons involved in the illicit distribution of controlled substances often attempt to conceal their identities as well as the locations at which drug transactions occur and where drugs and drug records are stored.  These individuals are also known to have vehicles, properties, utilities, and other items purchased in the names of others in order to conceal the association of drug activities with financial transactions.  Affiant knows that drug traffickers often place assets in the names of spouses and relatives in order to avoid detection and to help shield the assets from seizure and forfeiture by law enforcement authorities.  Affiant knows that individuals engaged in organized drug distribution and sales maintain extensive contact with persons from whom they receive drugs and with whom they distribute these drugs.  Maintaining extensive contact with suppliers, customers and associates requires that drug traffickers have continuous access to telephone and internet communications, including cellular telephones (traditional and pre-paid).  Affiant also knows that drug traffickers are increasingly using cellular phones with the ability to send text messages, pictures, video and other electronic forms of communication.  Through investigation, training, and monitoring of

Title III interceptions, Affiant has become familiar with the types and amounts of profits made by drug traffickers and the methods, language, and terms which are used to disguise the source and nature of the profits from their illegal drug sales.

5.      Affiant is aware that drug traffickers often maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing narcotics activities and other businesses as well as for paying bills, acquiring assets, and making other purchases.  Affiant is aware that it is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, the residences of their associates, and residences of family members for ready access and to conceal them from law enforcement authorities.

6.      Affiant is aware that persons engaged in drug trafficking conceal in their residences and/or other premises they control large amounts of currency, financial instruments, precious metals and gems, jewelry, and other items of value and/or proceeds of drug transactions.  Drug traffickers also use bank safety deposit boxes to store and to safeguard assets derived from drug trafficking activity, to include currency and other valuables.  To help avoid detection, such safety deposit boxes are often obtained in the name of third parties who agree to open and to access the boxes on behalf of the drug trafficker.

7.      Affiant is aware that persons engaged in drug trafficking conceal in their residences and/or other properties under their control where drug trafficking activity is conducted: drugs, scales, blenders, baggies, cutting agents, large amounts of cash, money counters, and other items used in preparing, packaging, selling, and transporting narcotics.  To protect drugs and/or proceeds from the sale of drugs, drug traffickers commonly maintain firearms and ammunition at their places of residence and/or other locations under their control

where drugs or drug monies are stored.

8. Affiant is aware that individuals involved in narcotics trafficking often maintain records linking them to their trafficking activity and their drug trafficking associates. These records may include both physical and electronic notes, records, or ledgers of narcotics sales, debts owed, past or future shipments, and other records, including telephone records, which identify customers and/or other co-conspirators. Drug traffickers also commonly maintain at their places of residence and/or other properties they control photographs of associates, controlled substances, firearms, currency and other assets, which serve to memorialize the drug traffickers' activities and perceived accomplishments. Drug traffickers also maintain at their place of residence financial records relating to assets acquired through drug trafficking activity, to include purchase records, bank records and safety deposit box records. Affiant is aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

## BASIS OF INFORMATION

7. Except as otherwise noted, the information set forth in this Affidavit has been provided to me by agents and/or officers of the Drug Enforcement Administration (DEA), or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom Affiant has spoken or whose report Affiant has read and reviewed. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects and record checks has been obtained through the Law Enforcement Automated Data System (LEADS), the State of Ohio or the National Crime Information Center (NCIC), the Ohio Law Enforcement Gateway (OHLEG)

computer system, and other known public database computer systems, by members herein described.

9.Since this Affidavit is being submitted for the limited purpose of securing an arrest warrant, Affiant has not included each and every fact known to me concerning this investigation. Affiant has set forth only the facts that Affiant believes are necessary to establish the foundation for the issuance of the complaint and arrest warrant.

## FACTS AND CIRCUMSTANCES REGARDING PROBABLE CAUSE

10.On or about June 26, 2018, a confidential reliable source of information informed law enforcement that a drug transaction would occur on the evening of June 26, 2018, at the Petro truck stop, just off Exit 226 on Interstate 80, in Girard, Ohio. Based on this, and other information corroborated by law enforcement, agents set up surveillance in and around the Petro truck stop at approximately 9:40 p.m. on June 26, 2018.

11.At approximately 11:27 p.m., a 2009 Acura bearing Ohio license plate GKS 8127 arrived at the truck stop. The vehicle was driven by MANUEL ALBARADO. A currently uncharged individual ("U.I.") was the front seat passenger. An individual exited a nearby semi-truck and motioned for Acura to approach. The Acura came a stop behind a cashiers building at the truck stop. ALBARADO and the U.I. then switched positions in the Acura.

12.A short time later, the semi-truck driver approached ALBARADO and handed him a bag through the passenger window of the Acura. The Acura drove approximately 50 feet away, came to a stop, and its trunk was opened. ALBARADO exited the vehicle carrying a bag, placed the bag in the trunk, closed the trunk, and reentered the Acura's passenger seat.

13.The Acura drove away from the Petro gas station at approximately 11:32 p.m., and began to travel westbound on Interstate 80.

14. On June 26, 2018, at approximately 11:55 p.m., Ohio State Highway Patrol ("OHP") Sergeant Michael Trader (badge number 1087) conducted a traffic stop on Interstate 80 westbound at mile marker 206.4 of a 2009 Acura bearing Ohio license plate GKS 8127 for violation of Ohio Vehicle Code 4511.34 (Following Too Closely/Tractor Trailer).

15. During the traffic stop, Trooper Timothy Dobbins and his K9 Rexo assisted Sergeant Trader on the traffic stop. Trooper Dobbins was approximately 3 minutes away from the traffic stop, which caused no further delays during the stop.

16. Trooper Dobbins has been employed with the OHP since May 2007 to carry out the duties as an Ohio State Trooper. During his career he has held a temporary position with the OHP's Criminal Interdiction Team from 2010 to 2012. Between May 2007 and now, he has attended three criminal patrol courses. Additionally, from January 2018 to February 2018, he has taught criminal interdiction—included human behavior and physical indicators—to other Troopers and outside agencies. He was the recipient of the Highway Patrol Drug Interdiction Award for seven years of his career. Trooper Dobbins has made numerous large seizures of controlled substances over his career. In March 2017, he was selected to be a K9 Handler and was paired with K9 Rexo as part of a special criminal interdiction team focused on removing illegal controlled substances. Canine Rexo and Trooper Dobbins attended a 10-week training course presented by the OHP. At the end of the course, the pair were certified by the Ohio Peace Officers Training Academy in patrol and narcotics detection. Canine Rexo has been in service since May 26, 2017. Canine Rexo recertified at the beginning of May 2018 by the Ohio Peace Officers Training Academy.

17. Upon arrival, Trooper Dobbins conducted an open air sniff with his K9 around the vehicle which alerted to the odor of an illegal substance near the passenger side rear wheel well

and passenger side door seem.

18. Trooper Dobbins and Sergeant Trader then conducted a probable cause search of the vehicle, which recovered a backpack type bag containing six vacuum sealed individually wrapped packages containing suspect cocaine, weighing approximately 6,602 grams (6.602 kilograms). Sergeant Trader and Trooper Dobbins later transported Santaella and ALBARADO to the Highway Patrol post located at the Hiram Post 91 off Interstate 80.

19. On June 27, 2018, at approximately 12:50 a.m., OSP turned over custody of the suspected cocaine and ALBARADO to DEA Special Agent (SA) Melonie Mague and DEA Task Force Officer (TFO) Luke Combs. TFO Combs and SA Mague then transported ALBARADO to the Cuyahoga County Jail.

20. The suspected cocaine was processed by TFO Combs, as witnessed by SA Mague and later transferred to the Cuyahoga County Crime Laboratory to be processed as evidence.

## CONCLUSION

21. Special Agent Melonie Mague, Drug Enforcement Administration, being duly sworn according to law, deposes, and states that the facts stated in the foregoing Affidavit are true and correct to the best of her knowledge, information, and belief.

22. Based on my training, experience and the facts set forth in this Affidavit, Affiant believes that there is probable cause to believe that MANUEL ALBARADO committed a

violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(ii), (possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine).

Melonie Mague
Special Agent
Drug Enforcement Administration

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



Thomas M. Parker
United States Magistrate Judge

4:54 PM, Jun 27, 2018